# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

TROY MCCLOUD                                    CIVIL ACTION

VERSUS                                          NO. 08-3800

BURL CAIN, WARDEN                               SECTION "C" (2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. It was recently reassigned to me. Record Doc. No. 50. Upon review of the entire record,[1] I have determined that a federal evidentiary hearing is unnecessary. <u>See</u> 28 U.S.C. § 2254(e)(2).[2] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]The state court record originally submitted to this court has now been supplemented on two occasions. The record now consists of a total of 13 volumes, identified as State Rec. Vols. 1-6, State First Supplemental Rec. Vol. 1 of 1, and State Second Supplemental Rec. Vols. 1-6.

[2]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    <u>STATE COURT FACTUAL AND PROCEDURAL BACKGROUND</u>

The state court record, as twice supplemented, presents a lengthy and tortuous procedural morass.  On November 13, 2002, the Jefferson Parish District Attorney filed a bill of information charging petitioner, Troy McCloud, with one count of distribution of cocaine within 1,000 feet of a school, in violation of La. Rev. Stat. § 40:981.3.[3]  On or about February 5, 2003, petitioner filed a Motion to Appoint Sanity Commission to Determine Competency to Stand Trial.  The trial court granted the motion and appointed a sanity commission.[4]  The court held a competency hearing on March 18, 2003.  The parties stipulated to the contents of the doctors' report, and the court found petitioner competent to stand trial.[5]

On April 8, 2003, the trial court denied petitioner's motions to suppress evidence and identification.[6]  On that same day, the state amended the bill of information to change the police item number,[7] and McCloud was found guilty on three counts of contempt of

---

[3]State Rec. Vol. 1 of 6, Bill of Information in Case No. 02-6326, 24th Judicial District Court for the Parish of Jefferson, Louisiana.

[4]State Rec. Vol. 1 of 6, Motion to Appoint Sanity Commission and Order, 2/10/03.

[5]State Rec. Vol. 1 of 6, Minute Entry, 3/18/03.

[6]State Second Supplemental Rec. Vol. 5 of 6, Transcript of Proceedings dated April 8, 2003; State Rec. Vol. 1 of 6, Minute Entry, 4/08/03.

[7]State Rec. Vol. 1 of 6, Bill of Information.

court and sentenced to six (6) months in prison as to each count, the sentences to be served consecutively.[8]

On November 13, 2003, his case was set for jury trial, but his counsel indicated that McCloud wished to waive his right to a jury trial and have a bench trial. The bench trial was held that day, and McCloud was found guilty as charged.[9]  The Louisiana Fifth Circuit Court of Appeal subsequently summarized the facts of the case, as proven at trial, as follows:

> Agent Vincent Carter testified that he is an undercover narcotics officer with the Jefferson Parish Sheriff's Office.  On the afternoon of October 1, 2002, he went to a part of Marrero known as "Field of Dreams." Carter testified that the neighborhood is a high drug trafficking area. The agent was in an unmarked truck, which was equipped with audio and video equipment.
>
> Carter stopped his truck at the corner of Fields Street and Ames Boulevard. Defendant [McCloud] approached the driver's side window of the vehicle.  Defendant attempted to buy cocaine from defendant, but defendant sensed he was an officer and would not deal with him at that point. Defendant got into the back of Carter's truck, and Carter drove a short distance to the corner of Fields and Meyers. Defendant went to the vehicle's passenger side window and sold Carter one rock of crack cocaine. Carter paid defendant with a marked twenty dollar bill and then left the area. Carter turned over the cocaine to Agent Eric Dufrene, a nearby surveillance officer. Dufrene testified that he measured the distance from the corner of Fields and Meyers to the Ames Elementary School to be less than one thousand feet. The videotape of the transaction was played for the court at trial. Carter identified defendant as the subject who was seen approaching the driver's side window.  Carter noted that the video camera in his truck was positioned to record what occurred on the driver's side of the truck only.  Since the cocaine transaction took place on the passenger side of the truck, it was not recorded.

---

[8]State Rec. Vol. 1 of 6, Minute Entry, 4/08/03.

[9]State Rec. Vol. 1 of 6, Minute Entry, 11/13/03.

Deputy Kurt Zeagler testified that he was working in uniform on the afternoon of October 1, 2002. Agent Carter contacted him by police radio following the transaction and gave him a description of the perpetrator and his location. Zeagler located defendant, who met the description given by Carter. Zeagler stopped defendant for a field interview. The officer obtained defendant's name, address, height, weight, date of birth, and Social Security number. He recorded the information on a field interview card. Zeagler also took a Polaroid photograph of defendant.

Agent Dufrene testified that he compiled a photographic lineup using the Automated Fingerprint Identification System (AFIS). He showed Agent Carter the videotape made during the cocaine transaction. Dufrene then showed Carter the photographic lineup. Carter identified defendant as the man who sold him the crack cocaine. Carter also identified defendant at trial. Zeagler testified that he obtained a warrant for defendant's arrest based on Carter's identification.

Defendant testified at trial that at 3:00 p.m. on October 1, 2002, he was leaving a McDonald's restaurant, and was going to have his hair fixed on Fields Street. He testified that he spoke with Carter at the corner of Field and Ames, but that he did not get into the back of Carter's truck. Defendant admitted he was pictured in Carter's videotape, but he denied that he gave Carter crack cocaine or that he received any money from the officer. He testified that the Polaroid photograph was a picture of him but said he did not know how the photograph was taken.[10]

Afer his conviction, McCloud filed a pro se motion for new trial, which was denied on February 2, 2004. On that day, the court sentenced McCloud to 45 years in prison at hard labor, with the first two (2) years of the sentence to be served without benefit of parole, probation or suspension of sentence.[11] The State subsequently filed a Multiple Offender Bill of Information on February 17, 2004, alleging that McCloud was

---

[10]State v. McCloud, 901 So.2d 498, 502-03 (La. App. 5th Cir. 2005)(No. 04-KA-1112).

[11]State Rec. Vol. 1 of 6, Motion for New Trial and Minute Entry, 2/02/04; State Rec. Vol. 4 of 6, Transcript of Proceedings, 2/02/04.

a third felony offender.[12]  On May 20, 2004, the trial court held a habitual offender hearing and found that McCloud was a third felony offender. On that same day, the court vacated petitioner's original sentence and imposed an enhanced sentence of 65 years in prison at hard labor, without benefit of parole, probation or suspension of sentence. Petitioner then made an oral motion for appeal, and the court granted the motion.[13]

On direct appeal, McCloud asserted the following claims: (1) invalid waiver of his right to jury trial, (2) excessive sentence and (3) errors patent review.  Petitioner also filed a pro se supplemental brief raising the following additional claims: (1) The trial court erred in failing to suppress a suggestive photographic identification. (2) The trial court erred in failing to suppress or invalidate the arrest warrant. (3) There was insufficient evidence that the narcotics transaction occurred within 1,000 feet of a school, as required to support the conviction.[14]

On March 29, 2005, the Louisiana Fifth Circuit Court of Appeal rejected all of petitioner's claims, except whether he had validly waived his right to a jury trial.  As to that issue, the appellate court stated: "[W]e conditionally affirm defendant's conviction and sentence, and remand the case for an evidentiary hearing on the question of whether

---

[12]State Rec. Vol. 1 of 6, Multiple Bill, 2/17/04.

[13]State Rec. Vol. 1 of 6, Minute Entry, 5/20/04; State Rec. Vol. 4 of 6, Transcript of Proceedings, 5/20/04.

[14]State Rec. Vol. 4 of 6, Appeal brief, 10/22/04.

defendant validly waived his right to a jury trial." State v. McCloud, No. 04-KA-1112, 901 So.2d 498, 504 (La. App. 5th Cir. 2005) (emphasis added). The court specifically instructed the trial court to vacate petitioner's conviction and sentence and grant petitioner a new trial "if it finds there was no valid jury waiver." Id. (emphasis added). "Conversely, if the trial court finds there was a valid jury waiver, defendant's conviction and sentence should be affirmed, and defendant allowed the right to appeal the adverse ruling." Id.[15] On January 13, 2006, the Louisiana Supreme Court denied petitioner's application for a writ of certiorari. State v. McCloud, 920 So.2d 235 (La. 2006).[16]

On June 1, 2006, after remand to the trial court, the state trial court held an evidentiary hearing and took the matter under advisement.[17] On November 15, 2006, the trial court entered an order finding that petitioner had knowingly and intelligently waived his right to trial by jury.[18]

On February 1, 2007, McCloud filed for an application for post-conviction relief asserting claims of ineffective assistance of counsel (based on counsel's failures

---

[15]State Rec. Vol. 1 of 6, Louisiana Fifth Circuit opinion, 04-KA-1112, 3/29/05.

[16]State Rec. Vol. 1 of 6, Louisiana Supreme Court opinion, 2005-KO-1450, 1/13/06.

[17]State Rec. Vol. 2 of 6, Minute Entry and Transcript of Proceedings, 6/01/06.

[18]State Rec. Vol. 2 of 6, Trial Court Order, 11/15/06. Petitioner had previously filed a petition for writ of mandamus to compel the trial court to rule on his claim that his waiver of a jury trial was invalid. The Louisiana Fifth Circuit granted the writ and transferred the application to Division "E" of the 24th Judicial District Court for a ruling on October 27, 2006. State Record Vol. 2 of 6, Order of the Louisiana Fifth Circuit in 06-KH-789.

(a) properly to cross-examine a state's witness, (b) to file a motion to suppress the arrest warrant and (c) to obtain an expert witness) and that the trial judge had failed to take judicial notice of certain defects in the arrest warrant.[19] The trial court denied the application on April 2, 2007, and the Louisiana Fifth Circuit subsequently denied petitioner's related writ application, finding that the trial court had not erred in its April 2nd ruling.[20] A subsequent request for review by the Louisiana Supreme Court was denied on March 24, 2008.[21]

In the interim, McCloud filed a motion for out-of-time appeal on June 11, 2007, arguing that the Louisiana Fifth Circuit had previously reserved his right to a second appeal on the issue of whether a valid jury waiver had occurred and that he had not received timely notice of the trial court's decision in order to file the appeal. The trial court ruled that the motion was untimely.[22] The Louisiana Fifth Circuit, however, set aside the trial court's ruling and ordered the trial court to grant an out-of-time appeal.[23]

---

[19]State Rec. Vol. 2 of 6, memorandum signed 2/01/07.

[20]State Rec. Vol. 2 of 6, Trial Court Order, 4/02/07, and Louisiana Fifth Circuit opinion, 07-KH-300, 5/03/07.

[21]State Rec. Vol. 3 of 6, Louisiana Supreme Court Order in 2007-KH-1274, 3/24/08; State v. McCloud, 977 So.2d 950 (La. 2008).

[22]State Rec. Vol. 2 of 6, Motion for Out-of-Time Appeal and Trial Court Order, 6/18/ 07.

[23]State Rec. Vol. 2 of 6, Louisiana Fifth Circuit opinion, 07-KH-560, 8/23/07.

On August 29, 2007, petitioner was granted an out-of-time appeal by the trial court, and the Louisiana Appellate Project was appointed to represent him.[24]

On December 17, 2007, petitioner filed a second appeal through his new counsel. However, the brief filed by Louisiana Appellate Project counsel was accompanied by a request for errors patent review, a motion to withdraw as McCloud's counsel, and a statement indicating that counsel had found no non-frivolous appealable issue in connection with McCloud's waiver of his right to jury trial, all pursuant to Anders v. California, 386 U.S. 738 (1967), and State v. Jyles, 704 So.2d 241 (La. 1997).[25] McCloud then filed a supplemental pro se brief, asserting that his waiver of a jury trial was invalid because it was unknowing.[26] On March 11, 2008, the Louisiana Fifth Circuit determined that petitioner had validly waived his right to jury trial and, thus, affirmed his conviction and sentence.[27] On February 13, 2009, the Louisiana Supreme Court denied petitioner's related writ application.[28]

---

[24]State Rec. Vol. 2 of 6, Trial Court Orders, 8/29/07 and 9/05/07.

[25]State Rec. Vol. 5 of 6, Counsel's Brief on Second Appeal, 12/17/07.

[26]Id., Pro Se Supplemental Brief 1/17/08.

[27]State v. McCloud, 978 So.2d 1139 (La. App. 5th Cir. 2008); State Rec. Vol. 5 of 6, Louisiana Fifth Circuit opinion, 07-KA-936, 3/11/08.

[28]State ex rel. McCloud v. State, 999 So.2d 1142 (La. 2009); State First Supplemental Rec. Vol. 1 of 1, Louisiana Supreme Court opinion, 2008-KH-1137, 2/13/09.

## II.   INITIAL FEDERAL HABEAS PETITION

On June 27, 2008, while his state court proceedings were still pending, McCloud filed the instant petition for a writ of habeas corpus in this court asserting the following three (3) claims: (1) He received ineffective assistance of counsel when counsel failed to file a motion to suppress his arrest warrant.  (2) The trial court erred in failing to take judicial notice of an error in his arrest warrant. (3) The trial court erred when it denied petitioner's motion to suppress a suggestive photographic identification.[29]

On December 10, 2008, petitioner submitted a pleading entitled "Motion to Amend or Supplement §2254 Petition and Hold the Petition in Abeyance to Exhaust State Remedies."[30]  In this motion, McCloud sought to amend his federal habeas petition to add the claim that his right to a jury trial was not properly waived because it was made unknowingly. Petitioner also asserted that the issue was unexhausted, and he attached a copy of a letter from the Louisiana Supreme Court indicating that his Case No. 08-KH-1137 was then pending before that court.[31]  The State filed a response, opposing a stay but conceding that petitioner's waiver of jury trial issue was unexhausted.[32] On March 8, 2009, petitioner filed a supplemental petition, again arguing that he should be allowed

---

[29]Record Doc. No. 1 (Petition).

[30]Record Doc. No. 18.

[31]Id.

[32]Record Doc. No. 21.

to amend to add his claim that he did not validly waive his right to a jury trial.[33]  On

March 31, 2009, petitioner's request for a stay was denied by Magistrate Judge Louis

Moore, Jr. as moot, since by then the Louisiana Supreme Court had ruled in Case No. 08-

KH-1137.  However, McCloud was allowed to amend to assert his claim that his waiver

of jury trial was invalid.[34] Magistrate Judge Moore issued a report on December 15,

2009, recommending that all four of petitioner's claims be denied.[35]

Petitioner filed objections to the report and recommendation.[36]  He also filed, on

or about December 2, 2010, a motion to amend/supplement his petition and for another

stay, claiming that on April 17, 2007, he had received "new evidence" in the form of a

Judiciary Commission Report pertaining to disciplinary actions taken against 24th

Judicial District Court Judge Martha Sassone.  McCloud argued that this "new evidence"

supported the following additional claims: (1) The trial judge wrongly denied him his

counsel of choice. (2) The judge's ruling on the motion to suppress should be annulled

due to "ill practice." (3) His counsel was ineffective in failing to object to the trial court's

denial of his counsel of choice.  McCloud attached a copy of the Judiciary Commission

report and a copy of the Louisiana Supreme Court's ruling adopting the recommendation

---

[33]Record Doc. No. 22.

[34]Record Doc. No. 24.

[35]Record Doc. No. 31.

[36]Record Doc. No. 32.

of the Judiciary Commission.[37]  On September 26, 2011, the presiding district judge in this court granted the motion to amend/supplement and the stay.[38] A motion to reopen the case was granted on March 20, 2012, and McCloud filed a supplemental memorandum.[39] The State filed a motion for leave to file an amended and restated response and a supplemental response on May 31, 2012, which was granted.[40]

III.    PARALLEL ADDITIONAL STATE COURT PROCEEDINGS

The state court record reflects that, _after_ McCloud signed and submitted this federal habeas petition and _before_ the previous report and recommendation was issued in this court, petitioner filed another post-conviction application in the state trial court on May 19, 2008, arguing that his new claims should be considered exceptions to the state limitations set forth in La. Code Crim. P. art. 930.8 (A)(1) because the claims were based upon new evidence.  In that application, McCloud asserted:  (1) The state court trial judge denied him his counsel of choice. (2) The judge's ruling on the motion to suppress should be annulled due to "ill practice." (3) His counsel was ineffective in failing to object to the trial court's denial of petitioner's counsel of choice.  The state trial court denied this application as procedurally barred pursuant to La. Code Crim. P. art.

[37]Record Doc. No. 33.

[38]Record Doc. No. 39.

[39]Record Doc. Nos. 41 and 42.

[40]Record Doc. Nos. 43, 44, 47 and 48.

930.4(A), (D) and (E) because the applications were repetitive, successive and inexcusably omitted from earlier post-conviction pleadings.[41] The Louisiana Fifth Circuit, however, granted petitioner's subsequent request for supervisory writs, vacated the trial court's ruling based upon procedural bar and remanded the matter to the trial court for consideration of the merits of petitioner's claims.[42]

Upon remand, the state trial court ruled that petitioner's claim of "newly discovered evidence" in the form of the Judiciary Commission report was irrelevant in that the Judiciary Commission report found that the judge had exceeded her contempt authority but did not address any of the issues or claims in petitioner's current application for post-conviction relief. The court emphasized, "[P]etitioner fails to state with reasonable particularity the factual basis for post-conviction relief by failing to state how the Judiciary Commission report is relevant to his claims." The trial court thus again procedurally barred petitioner's claims because each could have been raised on appeal but inexcusably were not.[43]

McCloud again sought review of the lower court's adverse decision in the Louisiana Fifth Circuit in Case No. 10-KH-226. This time, the appellate court granted

---

[41]State Second Supplemental Rec. Vol. 4 of 6, Trial Court Order, 8/12/09.

[42]State Second Supplemental Rec. Vol. 4 of 6, Louisiana Fifth Circuit opinion, 09-KH-761, 11/04/09.

[43]State Second Supplemental Rec. Vol. 5 of 6, Trial Court Order, 2/11/10.

the writ application, ruled that petitioner's claims were properly before the court and ordered the trial court to comply with the appellate court's November 4, 2009 order by addressing the merits of McCloud's claims.[44] On remand, the trial court ruled that petitioner was challenging a hearing on a motion to suppress that occurred on May 15, 2003, but that review of the record showed that the only motion to suppress in Case No. 02-6326 was held on April 8, 2003. It found that the May 15, 2003 hearing concerned another, separate and different criminal case involving McCloud, Case No. 02-5986, in which he had been charged with simple possession of cocaine. Thus, the state trial court denied petitioner's claims.[45] A request for review was filed in the Louisiana Fifth Circuit on or about November 19, 2010, and was denied for the same reasons set forth by the trial court, i.e., that the May 15, 2003 hearing of the motion to suppress pertained to a separate and different case and not to petitioner's charge of distributing narcotics within

---

[44]State Second Supplemental Rec. Vol. 5 of 6, Louisiana Fifth Circuit opinion, 10-KH-226, 5/20/10.

[45]State Second Supplemental Rec. Vol. 2 of 6, Trial Court Order, 10/14/10.

1,000 feet of a school zone.[46] On March 2, 2012, the Louisiana Supreme Court denied supervisory writs on petitioner's post-conviction claims.[47]

In addition to the long procedural history set forth above, McCloud had also filed a writ application in the Louisiana Supreme Court while his state post-conviction proceedings were underway and before the first report and recommendation issued by this court. On August 4, 2008, petitioner filed a pleading entitled "Petition for Writ of Certiorari," Louisiana Supreme Court Case No. 08-KH-1796, in which he complained that he was among a class of pro se litigants who had been denied proper review of his earlier post-conviction applications by a three-judge panel of the Louisiana Fifth Circuit Court of Appeal. On October 10, 2008, the Louisiana Supreme Court transferred his application to the Louisiana Fifth Circuit pursuant to the procedures outlined in State v. Cordero, 993 So.2d 203 (La. 2008).[48] On September 18, 2009, the Louisiana Fifth Circuit

---

[46]State Second Supplemental Rec. Vol. 2 of 6, Louisiana Fifth Circuit opinion,10-KH-1004, 2/18/11.

[47]State Second Supplemental Rec. Vol. 2 of 6, Louisiana Supreme Court Order, 2011-KH-0586, 3/02/12; State ex rel. McCloud v. State, 83 So.3d 1037 (La. 2012).

[48]State Second Supplemental Rec. Vol. 3 of 6, Application to the Louisiana Supreme Court, No. 08-KH-1796, 8/04/08, and Louisiana Supreme Court Transfer Order, No. 08-KH-1796, 10/10/08.

reviewed petitioner's five previously filed pro se writ applications and found no error in its prior rulings.[49] The Louisiana Supreme Court subsequently denied supervisory writs.[50]

## IV.   RE-OPENED FEDERAL HABEAS PETITION

On March 20, 2012, McCloud filed a motion to re-open his habeas corpus proceedings in this court and requested time to supplement his petition.[51] The presiding district judge granted the motion,[52] and on March 26, 2012, petitioner filed a supplemental memorandum.[53] The district judge also allowed respondent to supplement and file a first amended response to petitioner's supplement.[54]

Because the original report and recommendation was submitted by a different magistrate judge of this court more than two years ago, I will address all of petitioner's original and amended claims in an effort to provide the district judge with a consolidated report and recommendation. At present, McCloud's claims before this court are: (1) He

---

[49]State Second Supplemental Rec. Vol. 3 of 6, Louisiana Fifth Circuit opinion, 08-WR-934, 9/18/09. The court reconsidered all claims and provided specific written reasons for its denial of two of petitioner's claims, i.e., that the trial court failed to consider defects in the arrest warrant and that counsel was ineffective in failing to move to suppress the arrest warrant.

[50]State ex rel. McCloud v. State, 46 So.3d 1260 (La. 2010); State Second Supplemental Rec. Vol. 3 of 6, Louisiana Supreme Court Order, 2009-KH-2332, 10/08/10.

[51]Record Doc. No. 40.

[52]Record Doc. No. 41.

[53]Record Doc. No. 42.

[54]Record Doc. Nos. 44 and 48.

received ineffective assistance of counsel when his counsel failed to file a motion to suppress the arrest warrant. (2) The trial court erred in failing to take judicial notice of an error in his arrest warrant. ( 3) The trial court erred when it denied petitioner's motion to suppress a suggestive photographic identification. (4) McCloud's waiver of his right to jury trial was made unknowingly. (5)The trial court wrongly denied petitioner his counsel of choice. (6) The trial court's judgment on the motion to suppress should be annulled due to "ill practice." (7) He received ineffective assistance of counsel when his counsel failed to object to the trial court's denial of petitioner's counsel of choice and to her contempt findings when McCloud attempted to explain his choice of counsel.[55]

## IV.   FEDERAL HABEAS STANDARDS OF REVIEW

The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[56] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir.

---

[55]The first three claims were raised in petitioner's original habeas petition filed in this court on June 27, 2008. Record Doc. No. 1. The fourth claim was added in his first motion to amend. Record Doc. Nos. 18 and 24. Issues numbered 5, 6 and 7 above were added when the presiding district judge allowed McCloud again to amend his petition after the stay was lifted. Record Doc. Nos. 39 and 42.

[56]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)). The AEDPA therefore applies to McCloud's petition, which is deemed filed in this federal court on May 13, 2008.[57]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; <u>i.e.</u>, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. <u>Nobles v. Johnson</u>, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes that all of petitioner's claims have now been exhausted in the state courts as required under <u>Rose v. Lundy</u>, 455 U.S. 509 (1982).[58] The State also concedes that the claims challenging petitioner's conviction for distribution of cocaine within 1,000 feet of a school are timely filed.[59] The record supports a finding that the claims are timely, exhausted and not in procedural default.

---

[57]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. <u>Coleman v. Johnson</u>, 184 F.3d 398, 401 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1057 (2000); <u>Spotville v. Cain</u>, 149 F.3d 374, 378 (5th Cir. 1998); <u>Cooper v. Brookshire</u>, 70 F.3d 377, 379 (5th Cir. 1995). According to the records of the clerk of this court, McCloud's petition was first received in that office and tendered for filing on May 15, 2008. The petition was filed by the clerk of court on June 27, 2008, when petitioner's request to proceed as a pauper was granted. However, McCloud dated the signature on his original petition on May 13, 2008. Accordingly, this is the earliest date on which he could have delivered the pleadings to prison officials for mailing and the date his petition is deemed filed.

[58]Record Doc. No. 48 at p. 18.

[59]Record Doc. No. 48 at p. 20. But <u>see</u> discussion of time bar defense at p. 46, <u>infra</u>.

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. <u>Nobles</u>, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), <u>cert.</u> <u>denied</u>, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" <u>Penry v. Johnson</u>, 215 F.3d 504, 507 (5th Cir. 2000) (quoting <u>Miller v. Johnson</u>, 200 F.3d 274, 280-81 (5th Cir.), <u>cert.</u> <u>denied</u>, 531 U.S. 849 (2000)), <u>aff'd in part, rev'd in part on other grounds</u>, 532 U.S. 782 (2001); <u>Hill</u>, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485. "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. at 699. Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

VI.   ANALYSIS OF THE CLAIMS

(A)   "JUDICIAL NOTICE" OF ERROR IN ARREST WARRANT (CLAIM NO. 2)

McCloud complains that the trial court erred in failing to take judicial notice of

an error in his arrest warrant; specifically, that one of the three law enforcement officers

named in the arrest warrant and in the supporting affidavit was identified as Agent James

rather than as Agent Carter.  The transcript of the hearing on the motion to suppress held

on April 8, 2003, indicates that petitioner's counsel made a request, at his client's

insistence, that the trial judge take judicial notice of certain errors in the warrant and

accompanying affidavit.  Specifically, counsel noted for the court that the wrong name

of the agent was contained in the warrant and affidavit and that the warrant noted the date

of the drug transaction as September 1, 2002, while the affidavit indicated the transaction

occurred on October 1, 2002.[60]  McCloud initially raised this issue in his first direct

appeal, as part of his pro se supplemental brief dated December 29, 2004.[61]  The

Louisiana Fifth Circuit addressed the claim as follows:

> By this pro se assignment, defendant contends the trial court erred
> in denying his motion to suppress the arrest warrant, arguing that the
> affidavit in support of the warrant contained inaccurate information. The
> record does not contain a written motion to suppress or quash as to the
> arrest warrant. Moreover, defendant's motion to suppress the evidence did

---

[60]State Second Supplemental Rec. Vol. 5 of 6, Transcript of Proceedings, 4/08/03 at pp. 21-22.
A copy of the warrant and affidavit are also contained in State Rec. Vol. 6 of 6.

[61]State Rec. Vol. 4 of 6, Supplemental Pro Se Brief on Appeal, 10/29/04.

not pertain to any evidence seized pursuant to defendant's arrest. There was, in fact, no evidence seized following defendant's arrest.

The only reference the defense made below to the validity of the arrest warrant was in argument, by counsel, at the hearing on defendant's motions to suppress evidence and identification. At that hearing, defendant's counsel argued that, at Mr. McCloud's request, he would ask the Court to take judicial notice that the arrest warrant contained an error as to the date. Counsel went on to explain that the arrest warrant alleged defendant had committed the crime on September 1, 2002 and the warrant was signed on October 28, 2002. The affidavit attached to the warrant stated that the crime was allegedly committed on October 1, 2002. Therefore, defendant's counsel argued there was a faulty arrest warrant, as well as a faulty, tainted photo lineup.

After hearing some additional argument from the parties concerning the validity of the photographic lineup, the trial judge stated, "At this time the motion is denied." It is apparent that the court's ruling pertained not to the arrest warrant, but to defendant's motions to suppress the identification and evidence. The trial court did not rule on any motion having to do with the arrest warrant. There is not, therefore, anything for this Court to review.[62]

Additionally, during post-conviction proceedings, the state district court rejected petitioner's claim, specifically addressing the judicial notice issue as follows:

The action of taking judicial notice would have been improper, as this is not the purpose of judicial notice. The Code of Evidence, in addressing Judicial Notice of an Adjudicative Fact, specifies as follows:
A judicially noticed fact must be one not subject to reasonable dispute in that it is either:
(1) Generally known within the territorial jurisdiction of the trial court; or

---

[62]State v. McCloud, 901 So.2d 498, 507-08 (La. App. 5th Cir. 2005).

(2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
La.C.E. 201(B).

A review of the Code of Evidence quickly establishes that the question of credibility of [a] fact witness is not properly a subject for judicial notice. For this reason, the trial court did not err in refusing to take judicial notice of facts contained in the arrest warrant.[63]

The state district judge also noted that, pursuant to La. Code Crim. P. art. 206, "A warrant of arrest shall not be quashed or abated, and a person in custody for an offense shall not be discharged from custody, because of any informality or defect in the warrant, but the warrant may be amended, so as to remedy the informality or defect."[64] The court also noted that petitioner was <u>not</u> convicted based upon the warrant, but upon the witnesses who testified against him at trial.

Finally, the issue was re-visited during <u>Cordero</u> review by the Louisiana Fifth Circuit on September 18, 2009. At that time, the Fifth Circuit reiterated that, "[Judicial notice is not the proper remedy for such a claim. LSA-C.E. art. 201(B). In any event, the

---

[63]State Rec. Vol. 2 of 6, Trial Court Order, 4/02/07.

[64]State Rec. Vol. 2 of 6, Trial Court Order, 4/02/07. Although the state district court observed that petitioner's claim should properly have been raised on direct appeal rather than in post-conviction proceedings, pursuant to La. Code Crim. P. art. 930.3, it appears that petitioner in fact raised the claim on his direct appeal. See State Rec. Vol. 4 of 6, Supplemental <u>Pro</u> <u>Se</u> Brief on Appeal, 10/29/04. Therefore, this court does not rely on a possible procedural bar in denying petitioner's claim.

misnaming of the officer who purchased the drugs from relator in the affidavit amounted to a typographical error which did not render relator's conviction invalid." [65]

In his federal petition, McCloud again poses this claim as a failure to take judicial notice of a defective arrest warrant, a question purely of state law. It is well-established that federal habeas review is limited to questions of constitutional dimension. Jones v. Cain, 600 F.3d 527, 536 (5th Cir. 2010); Castillo v. Johnson, 141 F.3d 218, 222 and 224 (5th Cir.), cert. denied, 524 U.S. 979 (1998); Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992), cert. denied, 508 U.S. 978 (1993). In reviewing a state trial court's decisions under state law, such as its decision not to take judicial notice of an error in petitioner's arrest warrant, the federal habeas court's role "'is limited to determining whether a trial judge's error is so extreme that it constituted denial of fundamental fairness.'" Andrade v. McCotter, 805 F.2d 1190, 1193 (5th Cir. 1986) (quoting Mattheson v. King, 751 F.2d 1432, 1445 (5th Cir.1985)); accord Rachal v. Quarterman, 265 F. App'x 371, 378 (5th Cir. 2008).

In this case, the defects in the warrant and supporting affidavit were mere typographical or ministerial errors that do not rise to the level of undermining probable cause for petitioner's arrest or establishing fundamental unfairness. Agent Dufrene testified at trial that both the incorrect name of the agent and the incorrect transaction

---

[65]State Second Supplemental Rec. Vol. 3 of 6, Louisiana Fifth Circuit opinion, 08-WR-934, 9/18/09.

date in the warrant were mere typographical errors.[66] Agent Carter testified that he was the law enforcement officer who engaged in the undercover drug buy with McCloud on October 1, 2002.[67] Petitioner has failed to show any knowing or intentional misrepresentation in the warrant or affidavit.

Moreover, the typographical errors upon which McCloud bases this claim were immaterial. His conviction at trial was based not on the typographically erroneous arrest warrant but upon the evidence, including the credible testimony of the law enforcement officers, the surveillance tape of the drug transaction and petitioner's positive identification as the individual who conducted the drug deal. Under these circumstances, petitioner fails to demonstrate that the trial court's failure to take judicial notice under state law of these typographical defects in the arrest warrant constituted a denial of fundamental fairness rising to the level of constitutional significance.

McCloud is entitled to federal habeas relief only if he can show that the state court's adverse decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d at 507. He fails to do so in this instance. Accordingly, the instant claim for federal habeas corpus relief is without merit.

---

[66]State Rec. Vol. 4 of 6; Trial transcript, 11/13/03 at p. 21.

[67]State Rec. Vol. 4 of 6, Trial transcript, 11/13/03 at p. 24.

(B)     <u>SUGGESTIVE PHOTOGRAPHIC IDENTIFICATION (CLAIM NO. 3)</u>

McCloud complains about the procedure used in presenting a photographic lineup to Agent Carter. Specifically, he argues that the identification procedure was unduly suggestive in that Agent Carter identified petitioner as the person from whom he had purchased cocaine only after he had viewed the surveillance tape of the drug transaction involving petitioner. Additionally, he complains that he was the only person in the photographic lineup wearing braids and a tank top. McCloud thus contends that the photographic lineup was unduly suggestive and, therefore, should have been suppressed.[68]

"[A] conviction based on an eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification." <u>Coleman v. Quarterman</u>, 456 F.3d 537 (5th Cir. 2006) (<u>citing</u> <u>Herrera v. Collins</u>, 904 F.2d 944, 946 (5th Cir.1990) and <u>Simmons v. United States</u>, 390 U.S. 377 (1968)). "A two-step process governs the admissibility of identification evidence: First, a court must determine whether the pretrial identification was impermissibly suggestive; if it was, then second, a court must determine whether, 'under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification.'" <u>Id.</u>

---

[68]Record Doc. No. 1 at p. 29 of 32 (supporting brief at p. 20).

This analysis involves a mixed question of law and fact.  Id.  (citing Livingston v. Johnson, 107 F.3d 297, 309 (5th Cir.1997); Sumner v. Mata, 455 U.S. 591, 597 (1982) ("[T]he ultimate question as to the constitutionality of the pretrial identification procedures . . . is a mixed question of law and fact . . . .").  Accordingly, McCloud cannot prevail in his request for federal habeas corpus relief, unless he shows that the state court acted contrary to or unreasonably applied Supreme Court precedent in finding that the lineup was not impermissibly suggestive and that, even if it were, it did not taint Carter's identification of McCloud.

This issue was presented to the Louisiana Fifth Circuit in McCloud's first direct appeal.  The state appellate court began its analysis with a review of applicable Supreme Court law:

> Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony.  Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). In Manson v. Brathwaite, the United States Supreme Court listed five factors to be considered in determining whether an identification is reliable:  (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. A trial court's determination of the admissibility of an identification should be accorded great weight and will not be disturbed on appeal unless the evidence reveals an abuse of discretion. Id.

McCloud, 901 So.2d at 506.

After examining corresponding state law, the Louisiana Fifth Circuit reviewed the

applicable facts as follows:

> At the suppression hearing, Agent Dufrene testified that he showed a photographic lineup to Agent Carter at the Detective Bureau. Dufrene testified that he was able to compile the lineup after receiving a description and photograph of the subject, along with a field interview card. The description he received was of a black man wearing a red shirt and tan pants. Dufrene testified that Carter selected photograph number five from the lineup. It was a photograph of defendant. Dufrene testified that he did not suggest to Carter which photograph he should select. Nor did he offer Carter anything in exchange for the identification.
>
> Carter testified at the motion hearing that he watched the videotape of the cocaine transaction five minutes before viewing the photographic lineup. He selected photograph number five, the photograph of defendant, from the lineup. Carter also identified defendant at the suppression hearing as the man from whom he purchased crack cocaine on October 1, 2002. He testified that Dufrene did not suggest to him which photograph to select.

McCloud, 901 So.2d at 506-507.

Thereafter, the court evaluated petitioner's argument in the context of applicable

Supreme Court law and the pertinent facts:

> Defendant contends that the photographic lineup was suggestive in that defendant was the only one in the lineup who wore a tank top and braided hair. Defendant argues that the differences served to focus Carter's attention on his photograph.
>
> Strict identity of physical characteristics among the individuals depicted in a photographic array is not required; however, the resemblance must be sufficient to reasonably test the identification. The question for the reviewing court is whether the procedure is so conducive to irreparable misidentification that due process was denied. Manson v. Brathwaite, 432 U.S. at 116, 97 S.Ct. at 2254; State v. Peden, 04-71, pp. 13-14 (La. App. 5 Cir. 5/26/04), 875 So.2d 934, 944.

A study of the photographic lineup shows it is composed of six black men, all of whom have mustaches. The fact that defendant is the only one pictured wearing a tank top makes no difference because all of the men in the lineup are pictured with various types of shirts. The tank top does not cause petitioner to stand out. All of the men pictured in the lineup have close-cropped hair. It is not obvious from defendant's photograph that his hair is styled in braids. On the contrary, his hair looks similar to that of the other individuals in the lineup. Defendant's appearance in the photograph does not cause him to stand out.

We find that the identification procedure was not suggestive. Therefore, we need not reach the question of whether there was a substantial likelihood of misidentification. In any case, we also find there was little or no likelihood of misidentification. The transaction took place during daylight hours. Carter's testimony and the videotape evidence show that Carter was able to get a good look at the perpetrator. Deputy Zeagler testified that Carter gave him a description of the perpetrator and his location over the radio after the transaction was completed, and he found defendant based on that description. Dufrene then used the Polaroid photograph of defendant that Zeagler took to compile the lineup. Therefore, the trial court correctly denied defendant's motion to suppress identification.

McCloud, 901 So.2d at 507.

The state court's analysis is thorough and reasonable based on the facts presented in this record. Considering the totality of the factual circumstances, there was no substantial likelihood of irreparable misidentification. According to the transcript of the hearing on the motion to suppress, Agent Carter was a participant in the undercover drug transaction with petitioner. Thus, he was in a position to get a close look at petitioner. The drug purchase occurred at approximately 3:25 p.m., during daylight hours.[69] The

---

[69]State Second Supplemental Rec. Vol. 5 of 6, Transcript of Proceedings, 4/08/03 at pp. 13-18.

video tape of the transaction was made from Carter's own truck, and the agent subsequently identified himself at trial as being in the video which was shown at trial.[70] Both the field interview of petitioner and the Polaroid photo taken of him were based upon the detailed description given to Agent Zeagler by Agent Carter.[71]

Agent Carter positively identified McCloud as the individual from whom he purchased drugs, both through a photographic lineup and during an in-court testimonial identification.[72] The trier of fact in state court was in the best position to weigh the credibility of Agent Carter's testimony. "[D]eciding the credibility of eyewitness testimony is a factual finding and is given the highest amount of deference by reviewing courts." Patterson v. Cain, 2012 WL 1933748 (E.D. La. 05/29/12) (citing Rushen v. Spain, 104 S.Ct. 453, 464 n. 6 (1983)). The factfinder's decision to credit this testimony is a factual finding "that shall be presumed to be correct. The applicant [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1). Petitioner fails to meet his burden.

Based upon the reliability of the identification evidence and the deference given to credibility determinations made by the trier of fact, I find the state courts' denial of the

---

[70]Id. at p. 29.

[71]Id. at pp. 40-41.

[72]Id. at pp.27-28 and 45.

motion to suppress identification was a reasonable application of Supreme Court law, specifically <u>Manson v. Brathwaite</u>, 432 U.S. at 114-15, to the facts of this case. Accordingly, petitioner's claim for habeas corpus relief on this ground is without merit.

(C)     <u>WAIVER OF RIGHT TO JURY TRIAL (CLAIM NO. 4)</u>

McCloud claims that his constitutional rights were violated because he did not knowingly and voluntarily waive his right to trial by jury. The Constitution guarantees criminal defendants the right to trial by jury for serious offenses. U.S. Const. art. III, § 2, cl. 3 ("The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury."); <u>id</u>. at Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed.").[73] The Supreme Court has long recognized, however, that defendants have the right to waive a jury trial. <u>Patton v. United States</u>, 281 U.S. 276, 297-99 (1930), <u>abrogated on other grounds</u>, <u>Williams v. Florida</u>, 399 U.S. 78 (1970). "There is nothing in the Constitution to prevent an accused from choosing to have his fate tried before a judge without a jury even though, in deciding what is best for himself, he follows the guidance of his own wisdom and not that of a lawyer." <u>Adams v. U.S. ex rel. McCann</u>, 317 U.S. 269, 275 (1942).

---

[73]The Sixth Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment. <u>Duncan v. State of Louisiana</u>, 391 U.S. 145, 149, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and <u>Gideon v. Wainwright</u>, 372 U.S. 335, 342-45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

The United States Supreme Court has generally held that the waiver of a constitutional right cannot be presumed, that the waiver must be knowing and intelligent, and that "courts [must] indulge every reasonable presumption against waiver of fundamental constitutional rights." Johnson v. Zerbst, 304 U.S. 458, 464 (1938) (footnotes omitted); accord Schneckloth v. Bustamonte, 412 U.S. 218, 241-42 (1973). In Brady v. United States, the Court held that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." 397 U.S. 742, 748 (1970). The question whether waiver is proper "depend[s] on the unique circumstances of each case." Adams v. United States ex rel. McCann, 317 U.S. 269, 278 (1942). The waiver of a constitutional right cannot be presumed from a silent record. Boykin v. Alabama, 395 U.S. 238 (1969).

On habeas review, a state court's determination that a petitioner's jury trial waiver was valid is a mixed question of law and fact. Pignataro v. Poole, 381 F. App'x 46, 50 (2d Cir. 2010), cert. denied, 131 S.Ct. 1006 (2011); Lott v. Coyle, 261 F.3d 594, 610 (6th Cir. 2001); United States v. Watts, 45 F. App'x 323, 2002 WL 1868131, at *2 (5th Cir. 2002); LaCour v. LeBlanc, No. 04-0590-A, 2007 WL 2025206, at *4 (M.D. La. July 6, 2007); United States v. Farris, 77 F.3d 391, 396 (11th Cir. 1996). Thus, the state court's mixed finding of law and fact are entitled to deference, unless the state court's decision

was contrary to or involved an unreasonable application of clearly established Supreme Court precedent. <u>Penry</u>, 215 F.3d at 507.

In the instant matter, petitioner first raised his claim that his waiver of a jury trial was invalid on direct appeal. In response, the Louisiana Fifth Circuit reviewed the record and initially found that it was insufficient to make the requisite determination whether petitioner had, in fact, knowingly and intelligently waived his right to a jury trial. Accordingly, the state appellate court remanded the matter to the district court "for an evidentiary hearing on the question of whether [petitioner] validly waived his right to a jury trial." <u>Id</u>. at 504.

On remand, the state trial court conducted an evidentiary hearing on June 1, 2006, and took the matter under advisement.[74]  On November 15, 2006, the court rendered a judgment finding that petitioner knowingly and intelligently waived his right to jury trial. <u>McCloud</u>, 978 So.2d at 1140.[75]  In his second appeal to the Louisiana Fifth Circuit, McCloud once again argued that he did not knowingly and intelligently waive his right to a jury trial.  The state appellate court examined the evidence presented at the trial court's June 1, 2006 evidentiary hearing:

> At the evidentiary hearing regarding defendant's waiver of his right to a jury trial, defendant's former counsel, John Thomas, testified.  Mr.

---

[74]State Rec. Vol. 2 of 6, Minute Entry, Transcript of Proceedings, 6/01/06.

[75]See also State Rec. Vol. 2 of 6, Trial Court Order, 11/15/06.

Thomas stated that he remembered the trial very well and recalled having discussions with defendant about his right to a jury trial. Mr. Thomas testified that he told defendant it was his choice whether to have a jury or a judge trial. However, Mr. Thomas strongly recommended that defendant choose a jury trial based on the type of case it was. Mr. Thomas testified that the jury actually came into the room before defendant decided he did not want a jury trial.[footnote omitted] Once defendant told Mr. Thomas he did not want a jury trial, Mr. Thomas informed the court defendant did not want a jury trial and they proceeded with a bench trial. Mr. Thomas explained that he made defendant aware that he would present the case on his behalf and explained the <u>voir</u> <u>dire</u> process to him, including that he would have the right to exclude a number of jurors with peremptory challenges. However, Mr. Thomas testified that it was defendant's decision to waive the jury.

Mr. Thomas testified defendant was lucid and appeared to understand what he was doing when he had these discussions with defendant. He stated that discussions about the jury trial occurred prior to the day of trial.

After being questioned by the trial judge at the hearing, Mr. Thomas agreed that defendant was fully aware of his right to a trial by jury and made his own decision to waive this right. The trial judge asked Mr. Thomas if he had explained to defendant the advantages and disadvantages of a jury trial and of a judge trial and Mr. Thomas responded,

> Yes. And Mr. McCloud was, compared to most of the clients I deal with, Mr. McCloud was very savvy legally, he had filed his own federal lawsuit, and he had done a number of pleadings on his own, and I thought he was quite aware of what his rights were.

At the hearing on remand, defendant also testified. He testified that he did not recall the trial judge advising him of his right to a jury or judge trial and did not recall Mr. Thomas advising him of his rights to a judge or jury trial at any time. He explained that he only had one conversation with Mr. Thomas before trial and did not remember Mr. Thomas saying anything to him regarding having a jury trial. He testified that Mr. Thomas did not want to talk to him. He stated that he never told Mr. Thomas about the facts of his case prior to trial. He further testified that he was not aware he could have a jury trial and explained that he did not know the difference between the jury trial and judge trial on the day of trial. He found out the

difference later. Defendant did not recall the jury being in the courtroom. Defendant testified it was Mr. Thomas' choice to waive the jury trial and to have a judge trial.

McCloud, 978 So.2d at 1141-1142. Based upon the facts developed at the evidentiary hearing, the Louisiana Fifth Circuit concluded:

> The testimony of Mr. Thomas supports the judgment that there was a valid waiver of the jury trial. Based on this testimony, we find defendant's contention that the state failed to prove that he validly waived his right to jury trial to be without merit.

Id. at 1142.

As noted above, on federal habeas review the state courts' conclusion that petitioner validly waived his right to trial by jury, a mixed question of law and fact, is entitled to deference, unless it was contrary to or an unreasonable application of clearly established Supreme Court precedent. Petitioner has failed to make this showing. On the contrary, the record fully supports the state court's determination. The testimony of John Thomas, petitioner's former counsel, at the evidentiary hearing was specific, detailed and based upon his clear recollection of events. Thomas testified that although he advised McCloud that the choice of jury or bench trial was McCloud's, he also strongly recommended that McCloud choose jury trial and testified that he was well-prepared for voir dire and a jury trial that day. Counsel also testified that the jury actually entered the courtroom, that petitioner was aware that it was the jury for his case,

"and at that point Mr. McCloud decided he did not want a jury trial."[76] Defense counsel clearly testified that he was prepared to present McCloud's case to a jury, that he told McCloud he would call witnesses and cross-examine the State's witnesses, and that some jurors could be excluded by peremptory challenge.[77] He stated that McCloud was nervous but lucid during their discussion, that he understood what his lawyer was telling him about his right to and recommendation for a jury trial, and that "I thought he [McCloud] knew what he was doing" in choosing to proceed to trial without a jury.[78]

McCloud's testimony did not contradict the testimony of his counsel in key aspects. He merely testified that he did not recall being advised of his right to a jury trial as opposed to a bench trial and that he did not recall the jury coming into the courtroom before his non-jury trial commenced.[79] His testimony that his lawyer made the decision to waive a jury trial – not him – is purely conclusory and self-serving.

Based upon the overall record before this court, particularly the testimony offered at the evidentiary hearing held on June 1, 2006, the state district court was fully justified in crediting the testimony of McCloud's attorney in reaching its ultimate conclusion as to the knowing and informed nature of McCloud's jury waiver. In light of the deferential

---

[76]State Rec. Vol. 2 of 6, Transcript of Proceedings, 6/01/06 at pp. 9-11.

[77]Id. at pp. 9-10.

[78]Id. at p. 10.

[79]Id. at pp. 14-19.

AEDPA standard under which a federal court reviews state habeas decisions on mixed questions of law and fact, I do not find that the state court's determination that McCloud validly waived his right to a jury trial was an objectively unreasonable application of clearly established federal law. Bell v. Cone, 535 U.S. 685, 699, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). Petitioner thus fails to establish that he is entitled to relief on this claim.

(D)     COUNSEL OF PETITIONER'S CHOICE (CLAIM NO. 5)

On September 26, 2011, McCloud was allowed to amend his federal petition to assert a claim that "new evidence" in a state Judiciary Commission report that former state Judge Martha Sassone had exceeded her authority in imposing contempt of court citations against petitioner and others showed that Judge Sassone had denied McCloud his choice of counsel. Specifically, McCloud claims that when he appeared before Judge Sassone for a motion hearing, represented by his court-appointed attorney, he attempted to inform the judge that his family had instead hired private counsel to represent him. He claims that he did not want to go forward on the motion hearing with the court-appointed indigent defender. He argues that Judge Sassone refused to allow him to proceed with counsel of his choice and, instead, he was held in contempt of court for his efforts to communicate his preference for retained counsel to the court. In his supplement to his

federal petition, he argues that this denial of counsel of his choice at the hearing on the motion to suppress entitles him to habeas relief.[80]

The State filed a "Second Supplemental Response"[81] addressing this claim. In sum, the State argues that petitioner was <u>not</u> denied the right to his choice of counsel <u>in the case before this court</u>. Instead, the State argues, any complaint that McCloud might have about Judge Sassone's denial of his right to counsel of his choice occurred in a separate and different case that was ultimately dismissed before trial and which forms no basis of the case and conviction with which this court is concerned in this habeas proceeding.

I have reviewed the state Judiciary Commission report, the related decision of the Louisiana Supreme Court adopting the recommendation of the Judiciary Commission, and the separate transcripts of the April 8 and May 15, 2003 hearings[82] referenced in the Judiciary Commission report. The April 8, 2003 hearing addressed the photo lineup issues addressed above. My review of that transcript establishes that <u>no</u> request for a change of counsel, from court-appointed to retained, was made and no issue concerning McCloud's choice of counsel was raised during the April 8, 2003 hearing. Although

---

[80]Record Doc. No. 42 at pp. 2-6.

[81]Record Doc. No. 44.

[82]Petitioner attached copies of each to his Motion to Amend, Record Doc. No. 33-1.

petitioner was cited for contempt at that hearing, the contempt citation concerned a disagreement on the record between McCloud and his lawyer, and his failure to comply with the judge's order that he not speak out of turn.[83]

I have also reviewed the following colloquy, from the motion to suppress hearing held on May 15, 2003, which reflects the subject matter of petitioner's complaint:

> **Attorney**: Mr. McCloud has asked me to inform the Court that Mr. James Thomas Johnson . . .
> **Mr. McCloud**: John Thomas
> **Attorney**: John Thomas, has been paid either by Mr McCloud or his family to represent him. I do not believe Mr. Thomas . . .
> **Court**: Has Mr. Thomas signed the record?
> **The Clerk**: No ma'am.
> **The Court**: He hasn't signed the record. I think he was here on another defendant. He didn't sign the record, Mr. McCloud.
>> **Mr. McCloud**: He was here for both of them Monday. He's supposed to be in trial in Judge Zeno's court right now.
> **The Court**: Oh well. Mr. Fleming's your attorney as it stands now, and Mr. Thomas hasn't signed the record. And the police officer's here and we're going forward with the motion.
> **Mr. McCloud**: What I'm saying, I already retained Mr. Thomas.
> **The Court**: And I'm also going to set a hearing for you to pay IDB and reimburse the Indigent Defender Board for all the time they've spend representing you. Because if you can afford to pay Mr. Thomas . . .
> **Mr. McCloud**: I can't afford it. My family paid for it.
>                               * * *
> **Court**: . . . So let's just go ahead and proceed with the hearing, all right?
> **Mr. McCloud**: Are you telling me that I can't have the counsel of my choice?
> **The Court**: I'm not telling you anything, Mr. McCloud.

---

[83]State Second Supplemental Rec. Vol. 6 of 6, Transcript of proceedings, 4/08/03 at pp. 10-11, 19-20.

**Mr. McCloud**: You saying he's my attorney. I'm telling you he's not my attorney.

**The Court**: You don't need to address the Court, Mr. McCloud, all right? You have a lawyer sitting here.

**Mr. McCloud**: No, I don't.

**The Court**: Mr. McCloud, if you say one more word, I'm going to find you in contempt of court.

**Mr. McCloud**: So you're denying my right to have counsel of my choice.

**The Court**: I'm going to find you in contempt of court, Mr. McCloud, and sentence you to serve six months in the parish prison. All right, let's go on with the motion hearing, please.[84]

The cover sheet of the transcript of the May 15, 2003 proceeding does <u>not</u> identify by case number the particular case as to which the hearing was being conducted. However, shortly after the in-court discourse quoted above, the following discussion occurred:

**The Court**: What number is this on our docket?

**The Clerk**: 74.

**The Court**: 74, okay.

**Mr. Fleming** [petitioner's court-appointed counsel]: 02-5986. This is the possession of cocaine charge, <u>not</u> <u>the</u> <u>distribution</u> <u>within</u> <u>1,000</u> <u>feet of a</u> <u>school</u> . . . .[85]

Thus, the hearing that was held on May 15, 2003 pertained to petitioner's possession of cocaine charge in Case No. 02-5986, <u>not</u> the charge of distribution of narcotics within 1,000 feet of a school, which was case No. 02-6326 and which is the conviction being challenged in the instant habeas proceeding. The State has provided

---

[84]<u>Id.</u>, Transcript of proceedings, 5/15/03 at pp. 3-5.

[85]<u>Id.</u> at p. 6 (emphasis added).

this court with the state court record of Case No. 02-5986.[86] Review of that record shows that the possession of cocaine charge in that case was ultimately dismissed on May 20, 2004.[87] A separate minute entry in that case memorializes the motion hearing held on May 15, 2003, and the contempt citation complained of by petitioner.[88]

Review of the federal habeas petition filed in the instant case shows that petitioner is before this court challenging his conviction for distribution of cocaine within 1,000 feet of a school in violation of La. Rev. Stat. § 40:981.3.[89] Thus, to the extent petitioner claims that he was denied counsel of his choice relative to a hearing held in the conviction challenged before this court, he is factually incorrect and not entitled to relief. In short, the situation about which he complains did <u>not</u> occur in connection with his conviction for cocaine distribution within 1,000 feet of a school, but in a separate case against McCloud that has no bearing on this one.

---

[86]State Second Supplemental Rec. Vol 1 of 6.

[87]<u>Id.</u>, Minute Entry, 5/20/04 in Case No. 02-5986.

[88]State Second Supplemental Rec. Vol 1 of 6, Minute Entry, 5/15/03.

[89]Record Doc. No.1.

This finding is consistent with the state courts' findings concerning petitioner's alleged denial of choice of counsel.[90]  Specifically, the Louisiana Fifth Circuit found in pertinent part:

> Mr. McCloud's complaints arise from actions that occurred during the May15, 2003 hearing, which was a hearing regarding case 02- 5896 (sic) – Mr. McCloud's complaints are not related to the charge he was convicted of – La. R.S. 40:981.3, distribution of cocaine within 1,000 feet of a school. Because all charges in case number 02-05896 (sic) - which is unrelated to his present conviction – were ultimately dismissed, Mr. McCloud suffered no prejudice. Accordingly, the writ is denied.[91]

 The state court findings of fact are entitled to a "presumption of correctness," unless petitioner can overcome the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  McCloud fails to meet this burden and thus is not entitled to relief on this claim.

In addition, McCloud is not "in custody" as a result of the charges filed in Case No. 02-5986, a prerequisite to federal habeas corpus relief.  The "in custody" language of the federal habeas corpus statute, 28 U.S.C. §2254(a) and (b), requires that the habeas petitioner be "in custody" as a result of the conviction or sentence under attack at the time his petition is filed.  <u>Maleng v. Cook</u>, 490 U.S. 488, 489 (1989) (emphasis added);

---

[90]State Supplemental Rec. Vol. 2 of 6, Trial Court Order, 10/14/10, and Louisiana Fifth Circuit opinion, 10-KH-1004, 2/18/11.

[91]State Supplemental Rec. Vol. 2 of 6, Louisiana Fifth Circuit opinion, 10-KH-1004, 2/18/11. The Fifth Circuit incorrectly referenced the case number in the last page of its opinion, although the correct case number, 02-5986, was correctly cited in the remainder of the opinion.

Carafas v. LaVallee, 391 U.S. 234, 238 (1968); Zalawadia v. Ashcroft, 371 F.3d 292, 297 (5th Cir. 2004). McCloud is not "in custody" as a result of anything involved in Case No. 02-5986 because the charges against him in that case were dismissed. 28 U.S.C. § 2244(d)(1)(A).

For all of the foregoing reasons, this claim concerning McCloud's choice of counsel is without merit, and no habeas corpus relief is available to plaintiff based on it.

## (E)    TRIAL COURT "ILL PRACTICE" (CLAIM NO. 6)

This court also previously allowed McCloud to amend his federal petition with a claim that the state trial court's judgment concerning his motion to suppress evidence should have been annulled because of "ill practice" by the state trial judge.[92] McCloud did not brief this issue in his supplemental memorandum filed in this court on March 26, 2012. In his state court application for post-conviction relief, however, he argued that the ruling on the motion to suppress should be "annulled" because of the denial by Judge Sassone of petitioner's counsel of choice. McCloud claimed that her "ill practice," as supported by the findings in the Judiciary Commission report, was a denial of equal protection and due process.[93]

---

[92]Record Doc. Nos. 39 (this court's order granting motion to amend) and 33 (Motion to Amend and Stay Petition).

[93]State Second Supplemental Rec. Vol. 2 of 6, Pro Se Writ Application filed in 10-KH-1004, stamped as filed 11/19/10.

As discussed above, the actions taken by Judge Sassone during the May 15, 2003 hearing simply do not pertain to McCloud's conviction for dealing drugs within 1,000 feet of a school, the only conviction for which he is "in custody" and which he challenges in this federal habeas petition. Therefore, the actions of the trial judge at the May 15, 2003 hearing in a separate and different case against him, which was subsequently dismissed, simply cannot be the basis for a claim of judicial "ill practice" in this federal habeas case. Petitioner's claim in this regard is wholly without merit.

(F)     INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIMS NOS. 1 & 7)

Finally, McCloud complains that he received constitutionally ineffective assistance of counsel in two separate respects: (1) His counsel failed to file a motion to suppress the arrest warrant (Claim No. 1). (2) His counsel failed to object to the trial court's denial of his counsel of choice (Claim No. 7).

The issue of ineffective assistance of counsel is a mixed question of law and fact. Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010); Richards v. Quarterman, 566 F.3d 553, 561 (5th Cir. 2009). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80

L.Ed.2d 674 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough under Strickland, however, 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. ), cert. denied, 513 U.S. 960 (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively

reasonable professional assistance." Strickland, 466 U.S. at 689-90. In assessing

counsel's performance, a federal habeas court must make every effort to eliminate the

distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged

conduct, and to evaluate the conduct from counsel's perspective at the time of trial.

Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d 230, 236-37 (5th Cir.), cert.

denied, 537 U.S. 1104 (2002); Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000),

cert. denied, 531 U.S. 1167 (2001).

On habeas review, the United States Supreme Court has recently clarified that,

under Strickland, "[t]he question is whether an attorney's representation amounted to

incompetence under prevailing professional norms, not whether it deviated from best

practices or most common custom." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770,

788, 178 L.Ed.2d 624(2011). The Harrington Court went on to recognize the high level

of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both highly
> deferential, and when the two apply in tandem, review is doubly so. The
> Strickland standard is a general one, so the range of reasonable applications
> is substantial. Federal habeas courts must guard against the danger of
> equating unreasonableness under Strickland with unreasonableness under
> § 2254(d). When § 2254(d) applies, the question is not whether counsel's
> actions were reasonable. The question is whether there is any reasonable
> argument that counsel satisfied Strickland's deferential standard.

Id.

"A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell v. Cone, 535 U.S. at 702 (citing Strickland, 466 U.S. at 689). This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690. Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir.), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. Id.

    (1)    Failure to Move to Suppress Arrest Warrant

McCloud argues that defense counsel was ineffective because he failed to file a motion to suppress the arrest warrant. He claims that suppression of the warrant was justified because the warrant stated that Agent "James" had purchased cocaine from petitioner, yet the testimony from law enforcement officers at the suppression hearing

and at trial indicated that it was Agent Carter who had purchased cocaine from McCloud. He contends that if counsel had properly moved to suppress the arrest warrant, the court would either have suppressed it or would have held the officers in contempt for perjuring themselves at the hearing. According to petitioner, because of the major discrepancy between the facts set forth in the arrest warrant and the testimony offered at trial, "it is confusing to say which officer purchased the drugs, if any."[94]

I have already discussed and rejected the essential elements of these same arguments above in addressing McCloud's claim that the trial court erred in not taking judicial notice of the defects in the arrest warrant. As noted above and adequately explained in the officers' credible testimony, these were mere ministerial and typographical errors. As such, the errors did not rise to the level of constitutional significance requiring suppression. As the state court explained, La. Code Crim. P. art. 206 provides: "A warrant of arrest shall <u>not</u> be quashed or abated, and a person in custody for an offense shall <u>not</u> be discharged from custody, <u>because</u> of <u>any</u> informality or <u>defect in the warrant</u>, but the warrant may be amended, so as to remedy the informality or defect."[95]

---

[94]Record Doc. No.1 at p. 14.

[95]State Rec. Vol. 2 of 6, Trial Court Order, 4/02/07 (emphasis added).

An attorney's performance is not rendered constitutionally ineffective due to his failure to raise meritless objections or arguments. See Kimler, 167 F.3d at 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."); United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."). Under these circumstances, petitioner cannot show that his attorney would have prevailed on any motion to quash the charge or suppress the arrest warrant. Thus, he cannot establish prejudice.

In addressing errors made in a warrant and accompanying affidavit, the United States Supreme Court has stated:

> "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a truthful showing" (emphasis in original). This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

Franks v. Delaware, 438 U.S. 154, 164-65 (1978) (quoting United States v. Halsey, 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966), aff'd, Docket No. 31369 (CA2, June 12, 1967)); see United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (motion to suppress generally will not lie despite technical or clerical errors in the warrant, as long as law enforcement officers executed the warrant in good faith.)

Officer Dufrene, the affiant for the arrest warrant, testified that he participated as a surveillance agent in the undercover drug buy from which petitioner's conviction arises.[96] He also testified that the naming of Agent "James" rather than Carter in the warrant was a typographical error.[97] There is simply no evidence that law enforcement officers knowingly or with reckless disregard for the truth made a false statement in the warrant or affidavit to accomplish McCloud's arrest. Thus, petitioner's counsel's failure to file a motion to suppress the arrest warrant did not prejudice petitioner and was not ineffective assistance.

As the state appellate court observed:

> [T]he petitioner was not convicted as a result of the arrest warrant. Rather, he was convicted after a trial in which the witnesses came to court, took oaths to tell the truth, and testified as to their knowledge of the crime.

---

[96]State Rec. Vol. 4 of 6, Trial transcript, 11/13/03, at pp. 17-18.

[97]State Rec. Vol. 4 of 6, Trial transcript, 11/13/03, at p. 21.

The trier of fact had the opportunity to observe the demeanor and credibility of these witnesses.[98]

McCloud cannot meet the Strickland standard for establishing constitutionally ineffective counsel. Thus, he fails to show that the state court's denial of his claim was contrary to or involved an unreasonable application of clearly established Supreme Court precedent to the facts of the instant case. Accordingly, petitioner's assertion that he is entitled to federal habeas corpus relief based upon counsel's alleged ineffectiveness in this regard is without merit.

(2)     Failure to Object to Denial of Choice of Counsel

This is one of the claims which this court allowed petitioner to add to his federal petition by amendment based upon the actions of Judge Sassone addressed in the Judiciary Commission report. McCloud argues that his attorney provided ineffective assistance because he did not object to Judge Sassone's denial of the right to counsel of his choice at the hearing on his motion to suppress held on May 15, 2003. As explained above, petitioner was not denied counsel of his choice in this case. The motion hearing about which he complains occurred instead in his separate case charging him with simple possession of cocaine, Case No. 02-5986. That case was dismissed, and he is not in custody in connection with that charge. The conviction that he challenges in this case

---

[98]State Rec. Vol. 2 of 6, Trial Court Order, 4/02/07.

has nothing to do with the hearing upon which this denial of choice of counsel claim arises. Therefore, petitioner cannot establish that, but for the failure of his attorney to object to Judge Sassone's actions <u>in a different and separate case</u>, he would not have been found guilty of the charge of distribution of cocaine within 1,000 feet of a school. Petitioner again fails to establish a violation of the <u>Strickland</u> standard, and this claim must be denied.

## <u>RECOMMENDATION</u>

For all of the foregoing reasons, it is **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner, Troy McCloud, for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v.</u>

<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[99]

New Orleans, Louisiana, this _____16th_____ day of August, 2012.


_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[99]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.